United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MARIUSZ MUREK,

Petitioner,

v.

SERGIO ALBARRAN, et al.,

Respondents.

Case No. 26-cv-10719-BLF

**ORDER GRANTING PETITIONER'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

[Re: ECF 3]

Before the Court is Petitioner Mariusz Murek's application for a temporary restraining order ("TRO") and an order to show cause re preliminary injunction, seeking release from the custody of U.S. Immigration and Customs Enforcement ("ICE"). *See* Applic. for TRO, ECF 3. The application for TRO was filed shortly after Mr. Murek filed a petition for writ of habeas corpus and an amended petition for writ of habeas corpus[1] against Respondents Sergio Albarran, Acting Field Office Director of the San Francisco ICE Office; David J. Venturella, Acting ICE Director; Markwayne Mullin, Secretary of the United States Department of Homeland Security; and Todd Blanche, Acting Attorney General of the United States. *See* Pet. ECF 1; Am'd Pet., ECF 2.

Mr. Murek's application is GRANTED for the reasons discussed below.

## I. BACKGROUND

The amended petition, application for TRO, and supporting declaration of Mr. Murek's counsel establish the following. Mr. Murek is a 40-year-old native and citizen of Poland. He was lawfully admitted to the United States on a tourist visa on May 2, 2017. He has resided

[1] The amended petition was filed to correct the spelling of Mr. Murek's name.

continuously in the United States since then, most recently working as a property manager and handy man in Petaluma, California. Mr. Murek is married, and he and his wife have a 9-month-old son who is a United States citizen. Mr. Murek is the sole means of financial support for his wife and child. He has no criminal history in the United States or anywhere in the world.

Mr. Murek's tourist visa expired on May 17, 2026. On September 20, 2026, he went to the San Francisco International Airport to take a domestic flight to Phoenix, Arizona. ICE arrested Mr. Murek at the airport. He is not aware of any removal order against him.

Mr. Murek's counsel spoke with Mr. Murek's wife at approximately 2:02 p.m. on September 20, 2026. Mr. Murek's wife had spoken with Mr. Murek on the phone at approximately 1:15 p.m. that day, and he told her he was being held at an ICE center on Sansome Street in San Francisco. Counsel called and emailed the control room of the San Francisco ICE office, asking to communicate with Mr. Murek. ICE did not respond. Mr. Murek's counsel thereafter filed the petition, amended petition, and application for TRO, seeking Mr. Murek's immediate release from ICE custody.

## II. LEGAL STANDARD

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555

U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

## III. DISCUSSION

### A. Issuance of TRO without Notice

It is unclear whether Mr. Murek's counsel provided a copy of the application for TRO to Respondent's counsel. However, the Court finds that the requirements for issuing a TRO without notice are satisfied. *See* Fed. R. Civ. P. 65(b)(1) (setting forth requirements for issuance of a TRO without notice). Counsel for Mr. Murek has filed a declaration setting forth specific facts showing that immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition. Counsel states that the petition was sent to Civil Chief Pamela Johann at pamela.johann@usdoj.gov, and that Ms. Johann was advised that an application for TRO would be filed on September 20, 2026. The Court finds that under these circumstances, further notice to the Government was not required before the TRO was filed.

### B. Winter Factors

The Court next considers Mr. Murek's showing on the Winter factors.

#### 1. Likelihood of Success/Serious Questions Going to the Merits

The amended petition asserts two claims for relief, both under the Due Process Clause of the Fifth Amendment. Count 1 is a procedural due process claim and Count 2 is a substantive due process claim.

The Court finds that Mr. Murek has demonstrated a likelihood of success on his due process claims or, at the least, serious questions going to the merits of those claims. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that Clause protects." *Id*. at 690.

Many non-citizens asserting due process claims after detention assert a liberty interest arising from the Government's initial detention of and decision to release the non-citizen. *See Chaparro Ayala v. Albarran*, No. 26-CV-09430-CRB, 2026 WL 2621251, at *2 (N.D. Cal. Sept. 4, 2026) (collecting cases). That is not Mr. Murek's circumstance, because he was never previously detained by the Government. However, "[w]hen the government makes a decision not to detain someone in the first place, that decision can create the same liberty interest in that person's continued freedom as an individual initially detained." *Id*. (internal quotation marks, citation, and brackets omitted). Thus, the Government's decision not to detain a non-citizen upon the expiration of his visa can give rise to a protected liberty interest. *See id*. "This is particularly true where an individual forms the attachments of normal life while residing in the country for many years." *Id*. (internal quotation marks and citation omitted).

Mr. Murek has formed such attachments, as he has lived and worked in the United States for eight years, is married, and is raising a citizen child with his wife in their Petaluma community. Other courts in this district have found a significant liberty interest in nearly identical circumstances. *See Chaparro Ayala*, 2026 WL 2621251, at *2. In *Chaparro Ayala*, the district court had no trouble concluding that a non-citizen who overstayed his visa, and was detained without any pre-deprivation process, was likely to succeed on his due process claims under the three-factor inquiry set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). This Court finds *Chaparro Ayala* materially indistinguishable from the present case and likewise finds the first *Winter* factor to be met here.

**2. Irreparable Harm**

The Court finds that Mr. Murek has demonstrated a likelihood of irreparable harm absent issuance of a TRO. The Ninth Circuit has recognized "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Mr. Murek is the breadwinner for his wife and infant son. As a consequence, those risks are present here.

**3. Balance of Equities and Public Interest**

The last two factors, the balance of the equities and the public interest, are considered together where, as here, the government is the opposing party. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) ("When the government is a party, these last two factors merge."). "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering[.]" *Jorge M. F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (internal quotation marks, citations, and alterations omitted); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

Without the requested injunctive relief, Mr. Murek faces deprivation of his liberty. The comparative harm potentially imposed on Respondents is minimal – a short delay in detaining Mr. Murek while his entitlement to injunctive relief is litigated. Moreover, a party "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Accordingly, the Court finds that the balance of equities and public interest tip sharply in favor of Mr. Murek.

**4. Conclusion that Issuance of a TRO is Warranted**

Having considered the four *Winter* factors, the Court concludes that it is appropriate to issue a TRO to require Mr. Murek's release and return him to the status quo. *See E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Mr. Murek's detention. Accordingly, the application for TRO is GRANTED.

**C. Security**

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages

sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Ninth Circuit has "recognized that Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id*. Because the Court perceives no prejudice to Respondents resulting from the TRO, the Court finds it appropriate to issue the TRO without requiring security.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

United States District Court
Northern District of California

## IV. ORDER

(1) Mr. Murek's application for a TRO is GRANTED to preserve the status quo pending further briefing and hearing on this matter.

(2) Respondents are ORDERED to release Mr. Murek immediately from Respondents' custody and are ENJOINED from re-detaining Mr. Murek while this TRO is in effect. Respondents are ENJOINED from removing Mr. Murek from this judicial district, and, if they have already done so, are ORDERED to return him to this judicial district.

(3) Respondents are ENJOINED from removing Mr. Murek from the United States while this TRO is in effect.

(4) Respondents are ORDERED TO SHOW CAUSE at an in-person hearing in the courtroom of the assigned Judge, or as otherwise ordered by that Judge, at 9:00 a.m. on September 30, 2026, why a preliminary injunction should not issue. Respondents SHALL file a response to Mr. Murek's motion by 12:00 p.m. on September 25, 2026. Any reply SHALL be filed by 12:00 p.m. on September 28, 2026. The assigned Judge may modify this schedule.

(5) Mr. Murek SHALL serve on Respondents the petition, summons, and this order by 12:00 p.m. on September 22, 2026.

(6) Respondents SHALL file a status report regarding their compliance with this order by 5:00 p.m. on September 22, 2026.

(7) This order shall remain in effect until 10:00 p.m. on October 4, 2026.

Dated: September 20, 2026 at 10:00 p.m.

BETH LABSON FREEMAN
United States District Judge