UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARIUSZ MUREK,
Plaintiff,

v.

SERGIO ALBARRAN, et al.,
Defendants.

Case No. 26-cv-10719-PCP

**ORDER GRANTING WRIT OF HABEAS CORPUS**

Re: Dkt. Nos. 3, 13, 15

Petitioner Mariusz Murek is a native and citizen of Poland who has lived in the United States for over nine years. He entered lawfully on a tourist visa but stayed in the country for a period greater than permitted under the terms of his visa and after the visa's expiration in May 2026. He was detained by Immigration and Customs Enforcement (ICE) on September 20, 2026, while waiting to board a domestic flight at San Francisco International Airport. Mr. Murek filed a petition for a writ of habeas corpus and a motion for a temporary restraining order seeking his release, contending that he was detained in violation of his procedural and substantive due process rights under the Fifth Amendment. That same day, the Court issued a temporary restraining order requiring his release, enjoining the government from re-detaining him without notice and a pre-detention hearing before a neutral decisionmaker, and ordering the government to show cause why a preliminary injunction should not issue. At the preliminary injunction hearing, the parties agreed that the Court could rely upon the preliminary injunction record to determine whether Mr. Murek is entitled to the ultimate relief he seeks—issuance of a writ of habeas corpus. For the reasons set forth below, the Court grants the requested writ and prohibits the government from re-detaining Mr. Murek without first providing him with a hearing before a neutral decisionmaker.

**BACKGROUND**

Mr. Murek is a 40-year-old native and citizen of Poland. He was issued a B-1/B-2 visa (commonly referred to as a "tourist" visa) on May 20, 2016. *See* Exhibit 1, Motion for Temporary Restraining Order, Dkt. No. 3. The visa expired on May 17, 2026. According to his passport, he was admitted to the United States on June 26, 2016, and authorized to stay until December 25, 2016. *Id.* Mr. Murek was admitted again on February 2, 2017, and he was authorized to stay until May 2, 2017. *Id.* He has remained in the United States since his last entry on February 2, 2017. *Id.* The government suggests, and Mr. Murek does not dispute, that since February 2, 2017, Mr. Murek has not had contact with any government agency.

Mr. Murek lives with his wife and nine-month-old son, who is a U.S. citizen, in Petaluma, California. He works as a property manager and handyman, and he is the sole source of financial support for his wife and son. Mr. Murek has committed a "minor traffic infraction" but otherwise has no criminal history in the United States or elsewhere in the world.

On September 20, 2026, Mr. Murek was detained by ICE at San Francisco International Airport while waiting to board his flight to Phoenix, Arizona. His counsel subsequently filed a habeas petition and an *ex parte* motion for a temporary restraining order and order to show cause why a preliminary injunction should not issue. *See* Motion for Temporary Restraining Order, Dkt. No. 3. Later that day, another judge of this Court issued a temporary restraining order requiring Mr. Murek's release, enjoining the government from re-detaining him without notice and a pre-arrest hearing before a neutral decisionmaker, and ordering the government to show cause why a preliminary injunction should not issue. *See* Order Granting Petitioner's Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction, Dkt. No. 4. Mr. Murek was released from immigration custody at approximately 7:16 p.m. on September 21, 2026. *See* Status Report, Dkt. No. 9.

During the show cause hearing, the government asserted that ICE had offered to release Mr. Murek if he posted a $4,000 bond. The Court requested supplemental briefing regarding the factual basis for that assertion and its legal significance. The government subsequently filed a supplemental brief correcting its prior statement and stating that ICE had determined that Mr.

United States District Court
Northern District of California

Murek should be held without bond. Respondent's Supplemental Brief, Dkt. No. 17, at 1.

The Court's temporary restraining order was originally set to expire at 10:00 p.m. on October 4, 2026. At the hearing on this matter, the Court extended the temporary restraining order by 14 days, so that it now expires at 10:00 p.m. on October 18, 2026. The parties have agreed that the Court can treat their briefing on whether a preliminary injunction should issue as the response and traverse on the merits of Mr. Murek's petition for a writ of habeas corpus.

**LEGAL FRAMEWORK**

Two statutes, 8 U.S.C. §§ 1225 and 1226, provide for the detention of noncitizens or "aliens" pending removal proceedings. Under § 1225, a noncitizen "who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C. § 1225(a)(1)). Such individuals are subject to mandatory detention unless an exception applies. *See* 8 U.S.C. § 1225(b). For noncitizens like Mr. Murek who are "already in the country," § 1226 similarly permits detention "pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289. But unlike § 1225(b)(1) and (b)(2), § 1226 affords the government significant discretion with respect to detention. After arresting a noncitizen "[o]n a warrant issued by the Attorney General," the government "may continue to detain the arreste[e]" until a final removal decision is made or "may release" them on "bond" or "conditional parole." 8 U.S.C. § 1226(a)(1)–(2). Release is available, however, only if "the alien ... demonstrate[s] to the satisfaction of [an] officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). If a noncitizen wishes to contest the initial custody determination—*i.e.*, the denial or amount of bond—he has a right to do so before an immigration judge. 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). Immigration judges must deny bond unless "an alien ... demonstrate[s], by clear and convincing evidence, that release would not pose a danger to other persons or to property" and "that the alien is likely to appear for any scheduled proceeding or interview." 8 C.F.R. § 1003.19(h)(3).

The Court must grant a writ of habeas corpus to Mr. Murek if he is or will be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241; *see also*

United States District Court
Northern District of California

*Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (concluding that federal district courts have jurisdiction to issue such relief). Mr. Murek contends that his initial detention and threatened re-detention violate his procedural and substantive due process rights under the Fifth Amendment. Because the first issue is dispositive for the reasons set forth below, the Court need not at this time consider Mr. Murek's substantive due process claim.

"Courts analyze procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025); *see also Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) (explaining the two-step inquiry for procedural due process claims). If Mr. Murek establishes that he has a protected liberty interest, the Court must balance three factors to determine whether he was entitled to a hearing prior to being detained, or whether the post-detention review procedures set forth in § 1226 are sufficient to satisfy due process. Those three factors are (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

## ANALYSIS

### I. Mr. Murek has a protected liberty interest in avoiding immigration detention.

As noted above, the first step of the procedural due process analysis requires considering whether Mr. Murek has any interest protected by the Fifth Amendment. The answer to that question is clearly yes.

The Due Process Clause protects all persons in the United States, including noncitizens, from deprivations "of life, liberty, or property" by the federal government "without due process of law[.]" U.S. Const. amend. V; *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Once a noncitizen "enters the country, … the Due Process Clause applies to all 'persons' within the

United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. Indeed, the Supreme Court has long recognized that after a noncitizen "gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes," and as such, he "has a right to due process." *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107, 140 S.Ct. 1959.

Mr. Murek has certainly "established connections in this country," *id.*, sufficient to make him "a part of our population," *Yamataya*, 189 U.S. at 101. Mr. Murek was given permission to enter the United States on a tourist visa 10 years ago. After his last entry into the country in February 2017, Mr. Murek built a life and a community here over the course of more than 9 years. He has a wife and a nine-month-old son, who is a U.S. citizen, and they all reside together in Petaluma, California. Mr. Murek works as a property manager and handyman, and he is the sole source of financial support for his wife and son. He has "develop[ed] ties," *Landon*, 459 U.S. at 32, in Petaluma, where he shoulders financial responsibility for his wife and young U.S. citizen son and has spent nearly a decade building connections to this country. Mr. Murek is therefore entitled to due process under the Fifth Amendment.

The government contends that Mr. Murek lacks a protected liberty interest because it has never previously decided to release him or refrained from detaining him. Response to Order to Show Cause, Dkt. No. 13, at 6–9. But that argument ignores that any form of detention constitutes a deprivation of liberty. It is true that "courts in this district consistently hold that when a noncitizen is released pending civil removal proceedings, the noncitizen has a protected liberty interest in remaining out of immigration custody." *Llanes Tellez v. Bondi*, 826 F. Supp. 3d 1141, 1149 (N.D. Cal. 2025), *appeal dismissed*, No. 26-1003, 2026 WL 2445624 (9th Cir. June 17, 2026) (collecting cases). But those cases merely recognize an additional protected interest that must be considered as part of the due process analysis. They do not suggest that in the absence of

United States District Court
Northern District of California

that additional interest the loss of liberty resulting from detention is not in and of itself a deprivation of liberty for constitutional purposes. Nor could they, given the Supreme Court's recognition that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.

Mr. Murek's protected liberty interest in remaining out of immigration custody could therefore be taken away only if the government's procedure for doing so complied with the requirements of the Due Process Clause.

## II. The *Mathews* factors all favor providing Mr. Murek with a pre-detention hearing.

As noted above, *Mathews v. Eldridge*, 424 U.S. 319 (1976), identifies three factors that must be balanced in determining what procedures due process requires with respect to the deprivation of a protected interest:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. Each of these three factors supports the conclusion that Mr. Murek was and is entitled to a hearing before a neutral decisionmaker before being re-detained.

### A. Mr. Murek's private interest is substantial.

As explained above, Mr. Murek has a substantial interest in remaining out of custody. Indeed, his interest in remaining free "from government custody, detention, or other forms of physical restraint [] lies at the heart of the liberty" protected by the Fifth Amendment. *Zadvydas*, 533 U.S. at 690. The Court must be "careful not to 'minimize the importance and fundamental nature' of the individual's right to liberty." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (quoting *United States v. Salerno*, 481 U.S. 739, 750 (1987)). Mr. Murek lived free in the United States for almost a decade, and he has a substantial interest in remaining in his home, continuing his employment, caring for his young son, and providing the sole means of financial support for his family. *See Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025 (N.D. Cal. 2025) (holding that a

petitioner had "an interest in remaining in her home, continuing her employment, providing for her family, obtaining necessary medical care, maintaining her relationships in the community, and continuing to attend her church"); *Chiguil Chiguil v. Noem*, No. 1:26-CV-1844 DAD CSK, 2026 WL 913195, at *5 (E.D. Cal. Apr. 3, 2026), *report and recommendation adopted sub nom. Chiguil v. Noem*, No. 1:26-CV-01844-DAD-CSK (HC), 2026 WL 983134 (E.D. Cal. Apr. 13, 2026) (noting that "[t]he duration of petitioner's freedom prior to his detention elevates and underscores his interest in liberty").

The government argues that Mr. Murek "no due process right to a pre-deprivation hearing" because he is "subject to detention under § 1226(a)," and the Ninth Circuit held in *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), that the procedures provided under § 1226(a) are constitutionally adequate notwithstanding the absence of any pre-detention hearing. Response to Order to Show Cause, Dkt. No. 13, at 9. But *Rodriguez Diaz* did not hold that all noncitizens facing removal under § 1226(a) have no due process right to a pre-detention hearing. Instead, it held only that a noncitizen previously detained under § 1226(a)—*i.e.*, a noncitizen who was previously unable to demonstrate that they posed no flight risk or threat to the community—does not have the constitutional right to a *second* bond hearing when the only changed circumstance since their first bond hearing is the duration of their detention.

To be certain, it may be that the post-detention bond hearing provided under § 1226(a) provides constitutionally sufficient due process for those noncitizens who are detained relatively soon after their arrival in the country. Mr. Murek's circumstances, however, are different. He has lived for nearly a decade in the United States without incident. Except for a minor traffic infraction, Mr. Murek has no criminal history here or anywhere else in the world. *See* Amended Petition, Dkt. No. 2, at 1. There is no indication that Mr. Murek poses a flight risk or a danger to the community. Accordingly, Mr. Murek's private interest in retaining his liberty is significant.

**B. The risk of erroneous deprivation and value of additional safeguards are high.**

If Mr. Murek were re-detained pursuant to § 1226, he would be entitled to a post-arrest bond hearing before an immigration judge. But that hearing would only be provided after he had already been detained and thereby deprived of his liberty. As such, even if a post-detention bond

hearing would be available, there would remain a substantial risk that the government had erroneously deprived Mr. Murek of his liberty without a valid basis.

"[W]here ... the petitioner has not received any bond or custody redetermination hearing," "the risk of an erroneous deprivation of liberty is high." *Singh v. Andrews*, No. 1:25-CV-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025) (citation modified). That is because "neither [p]etitioner nor [r]espondents had an opportunity to determine whether any valid basis exists for [his] detention." *Oliveros v. Kaiser*, No. 25-cv-07117-BLF, 2025 WL 2677125, at *7 (N.D. Cal. Sept. 18, 2025). There are only two such bases for civil immigration detention: to prevent flight or to protect against danger to the community. *See Zadvydas*, 533 U.S. at 690. The government has offered no evidence suggesting that Mr. Murek's detention would serve either purpose. In fact, the record before the Court suggests the opposite. The government previously granted Mr. Murek a tourist visa and, upon arrival to the United States, made a determination that he was admissible. Mr. Murek has no criminal record aside from a minor traffic infraction, and he is the sole means of financial support for his wife and young son. It is therefore unlikely that Mr. Murek poses any threat or flight risk. *See Jorge M.F. v. Wilkinson*, No. 21-cv-01424, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021).

Given the absence of any evidence justifying Mr. Murek's detention, there is a significant risk that the deprivation of his liberty in the time between his arrest and any post-arrest bond hearing under § 1226 would be entirely unjustified. Providing Mr. Murek with the procedural safeguard of a pre-detention hearing would have significant value in helping ensure that any future detention has a lawful basis. The second *Mathews* factor thus strongly weighs in Mr. Murek's favor.

**C. The government's countervailing interest is minimal.**

The government's countervailing interest in detaining Mr. Murek without a pre-deprivation hearing is minimal. The government may have "a strong interest" in detaining noncitizens during the pendency of removal proceedings as needed to "protect[] the public from dangerous criminal aliens," or to prevent flight and thereby "increase the chance that ... the aliens will be successfully removed." *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Demore v. Kim*, 538 U.S. 510, 515 (2003)).

But the government has not shown, nor attempted to show, that Mr. Murek poses a flight risk or danger to the community. And while the government may in some circumstances have a strong interest in providing only a post-detention bond hearing where it cannot determine prior to detention whether the noncitizen poses a threat to the public or a flight risk, Mr. Murek's lengthy time in the United States, well-established family and social connections, and lack of a meaningful criminal record demonstrate that the government has no strong interest in detaining *Mr. Murek* before evaluating whether there is any valid basis for his detention. Whether or not this government interest might tilt the third factor in the government's favor in other cases, it has no significant weight here.

Finally, the costs associated with providing a pre-deprivation hearing would have likely been nominal. *See Singh v. Andrews*, 803 F.Supp.3d 1035, 1048 (E.D. Cal. 2025) ("In immigration court, custody hearings are routine and impose a minimal cost." (internal quotation marks omitted)).

The third *Mathews* factor therefore also strongly weighs in Mr. Murek's favor.

* * *

In sum, as applied to the specific circumstances of Mr. Murek's case involving an individual who entered the country lawfully, has developed deep connections within the United States over several years of residence therein, and has no significant criminal record, all three of the *Mathews* factors favor providing him with a hearing prior to any deprivation of his liberty. He is therefore entitled to issuance of a writ of habeas corpus. And because he has demonstrated success on the merits, a likelihood of irreparable injury to his constitutional rights in the absence of injunctive relief, and that the balance of equities and public interest favor such relief, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), Mr. Murek is entitled to a permanent injunction prohibiting the government from re-detaining him without first providing him with a pre-detention bond hearing.

**CONCLUSION**

For the foregoing reasons, the Court grants Mr. Murek's petition for a writ of habeas corpus and permanently enjoins the government from re-detaining Mr. Murek without first

United States District Court
Northern District of California

providing him with a pre-detention bond hearing before a neutral immigration judge. Mr. Murek must be provided with at least seven days' notice of any such bond hearing. The government may re-detain Mr. Murek only if, at such a bond hearing, the government bears its burden of demonstrating by clear and convincing evidence that Mr. Murek is a danger to the community or a flight risk and that no conditions other than detention would be sufficient to prevent such harms. This order does not address the circumstances in which the government may detain Mr. Murek in the event he becomes subject to an executable final order of removal.

This order resolves all pending motions.

**IT IS SO ORDERED.**

Dated: October 13, 2026

P. Casey Pitts
United States District Judge